**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**DELBERT W. SCOTT,**

**Petitioner,**

**v.**

**CASE NO. 2:13-CV-0362**
**JUDGE ALGENON L. MARBLEY**
**MAGISTRATE JUDGE KING**

**WARDEN, PICKAWAY CORRECTIONAL INSTITUTION,**

**Respondent.**

**REPORT AND RECOMMENDATION**

Petitioner, a state prisoner, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the *Petition*, Doc. No. 4, Respondent's *Motion to Dismiss*, Doc. No. 7, Petitioner's *Response*, Doc. No. 8, and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that Respondent's *Motion to Dismiss* be **GRANTED** and that this case be dismissed.

**Facts and Procedural History:**

Petitioner challenges his August 18, 2009, convictions, following a jury trial in the Madison County Court of Common Pleas, on five counts of rape of a child under the age of 13 and 11 counts of sexual battery. *State v. Scott*, Case No. CRI20090041, *Indictment*, *Exhibit 11* to *Motion to Dismiss*.[1] The Ohio Twelfth District Court of Appeals summarized the relevant facts and procedural history as follows:

> In 2008, 22–year–old S.B. went to the Madison County Sheriff's Office to report that Scott, her stepfather, had been sexually abusing her since she was eight years old. Scott married S.B.'s mother in 1988 when S.B. was three years old. Scott and S.B.'s

[1] The *Petition* also referred to separate proceedings in which Petitioner was charged with fleeing a eluding. *State v. Scott*, Case No. 2008 CR-07-070, *Indictment*, *Exhibit 1* to *Motion to Dismiss*. In his *Response*, Petitioner clarifies that he intends to challenge only the rape and sexual battery convictions. *Response*, *PAGEID* 976.

mother had two daughters together after they were married. According to S.B.'s testimony, Scott was a good father and "very good role model" from the time he married her mother, until she turned eight.

However, once S.B. turned eight years old, Scott told her that they were going to "play house." Scott "played house" with S.B. by laying with her in either his or her bed, rubbing his penis between her legs until he ejaculated on her stomach or into a towel, performing cunnilingus on her, touching her vagina, digitally penetrating her, as well as forcing her to perform oral sex acts on him, including fellatio. S.B. testified that these acts occurred two to three times a week.

During the times that Scott told S.B. that they were going to "play house," S.B.'s mother and her sisters were not at the house, or were asleep in other rooms. Scott told S.B. that if she told anyone about what was happening, she would never see her family again, that her mother would go to jail, and that her sisters would be placed in foster care.

S.B. turned 12 in 1997, and the abuse escalated to vaginal penetration. The first time Scott engaged in vaginal intercourse with S.B., he told her to tell her mother that she was ill, and that she needed to stay home from school. Once S.B.'s mother and sisters left the house for the day, Scott began to kiss S .B. and took her upstairs to her bedroom. Scott became aggressive, told S.B. that he was "tired of playing house," and engaged in vaginal intercourse with her. S.B. testified that as Scott held her down, she screamed for him to stop and that she told him she was in pain. After he completed the act, Scott apologized and told S.B. that he loved her. From that day forward, Scott continued to engage in vaginal intercourse with S.B. multiple times a week.

As S.B. grew up, Scott became more controlling over her, often forbidding her from having contact with other young people, especially boys. When S.B. had her first boyfriend as a sophomore in high school, Scott would demand that S.B. have sex with him before he would allow her to see her boyfriend. When S.B.'s boyfriend did come over, Scott supervised the couple, and would not allow them to hold hands or display any affection. S.B. also had to have intercourse with Scott before he allowed her to go to the prom.

When S.B. turned 18 and started college, Scott's controlling and abusive behavior continued. He called her on her cell phone before

classes started, between classes, when she left campus, and continued to call until she would verify that she was home. This behavior continued when S.B. turned 19 and enrolled in nursing school.

After S.B. turned 21, Scott called her on the phone up to 20 times a day to check her whereabouts. She moved out of the home, and into her own apartment, hoping that she could escape Scott's abuse. However, Scott came to S.B.'s home and forced her to have sex with him. Scott continued to threaten S.B. by telling her that he would kill her mother, sisters, and grandmother if she told anyone of his actions. Scott also continued to call S.B. 20–30 times each day, and began to follow her to and from work to make sure that she was not “running around.”

In 2008, S.B. began dating her co-worker, Travis Gierhart. Gierhart came to S.B.'s apartment frequently, and on one occasion, Scott came to S.B.'s apartment while Gierhart was there. Scott stayed with Gierhart and S.B. until approximately 1:00 a.m. and then engaged in intercourse with S.B. after Gierhart left. Scott continued to call S.B. multiple times a day at work, and Gierhart became suspicious of the relationship between S.B. and Scott.

Gierhart confronted S.B. with Scott's obsessive behavior and asked if she had been abused as a child. S.B. verified Gierhart's suspicions, but told him that the abuse had stopped a few years prior because she was fearful that Scott would do something to her mother and sisters, who still lived in Scott's home. Soon after she confided in Gierhart, S.B. told Scott that she was moving to be closer to Gierhart, and he threatened her again. S.B. then confided the entire truth to Gierhart, and he persuaded her to go to the police.

Lieutenant Doug Crabbe from the Madison County Sheriff's Office testified that he received a complaint from S.B. regarding Scott's sexual abuse. Officers tried to locate Scott in order to question him, and attempted to pull him over as he approached S.B.'s apartment. However, Scott fled, and a police chase ensued. Scott ultimately crashed his vehicle into a tree, and was transported to the hospital. Upon his release, he was detained.

Lt. Crabbe interviewed Scott after providing Miranda warnings, and Scott admitted to having a “close sexual relationship” with S.B. for the past five years. Scott provided a written statement in which he represented that the sexual relationship was consensual

> and that he had told S.B. that if she wanted to end the intercourse, she "needed to go away and not come back."
>
> Scott was indicted on 16 counts, one for each year of abuse that S.B. suffered between the ages of eight and 23. Specifically, Scott was charged with five counts of rape of a person less than 13 years of age, for the sexual acts that occurred when S.B. was between the ages of eight and 12. Scott was also charged with 11 counts of sexual battery, for the sexual abuse that occurred once S.B. turned 13 until the time she reported the abuse.
>
> Scott requested a jury trial, and such was held over two days in August 2009. The jury heard testimony from S.B., Gierhart, and Lt. Crabbe. The jury returned guilty verdicts for each count, and the trial court sentenced Scott to an aggregate term of 50 to 100 years. Scott was also classified a Tier III sexual offender, with lifetime reporting requirements.
>
> Scott requested appellate counsel be appointed at the end of his sentencing hearing. However, trial counsel did not file a timely notice of appeal, and appellate counsel was not appointed. Scott filed a pro se notice of delayed appeal, but such motion was denied by this court for failure to explain the reason for delay. Scott ultimately obtained appellate counsel, and filed a motion for delayed appeal, which this court granted.

*State v Scott*, No. CA2011-02-003, 2011 WL 6382540, at *1-3 (Ohio App. 12th Dist. Dec. 19, 2011). In his delayed direct appeal, Petitioner asserted that the evidence was constitutionally insufficient to sustain the convictions on rape and sexual battery as charged in counts 4, 6 and 9. *Id.* at *3. On December 19, 2011, the appellate court affirmed the judgment of the trial court. *Id*. On March 7, 2012, the Ohio Supreme Court dismissed Petitioner's appeal. *State v. Scott*, 131 Ohio St.3d 1476 (2012).

Petitioner pursued an application to reopen the appeal pursuant to Ohio Appellate Rule 26(B) in which he alleged that he had been denied the effective assistance of appellate counsel because his appellate attorney failed to raise on appeal a claim of ineffective assistance of trial counsel based on the latter's failure to preserve Petitioner's speedy trial rights. *Exhibit 24* to

*Motion to Dismiss*. On April 12, 2012, the state appellate court denied Petitioner's Rule 26(B) application, concluding that Petitioner had failed to establish the ineffective assistance of either appellate or trial counsel because there had been no violation of Petitioner's speedy trial rights. *Exhibit 25* to *Motion to Dismiss*. On July 25, 2012, the Ohio Supreme Court dismissed Petitioner's appeal from that judgment. *Exhibit 28* to *Motion to Dismiss*; *State v. Scott*, 132 Ohio St.3d 1484 (2012).

On March 18, 2013, Petitioner filed a petition for post-conviction relief under O.R.C. § 2953.21, complaining that he had been denied his right to a speedy trial and that his attorneys had failed to raise the issue. *Exhibit 29* to *Motion to Dismiss*. On March 26, 2013, the trial court denied Petitioner's post-conviction petition, reasoning that there had been no denial of Petitioner's speedy trial rights. *Exhibit 30* to *Motion to Dismiss*. Petitioner apparently did not file an appeal from that decision.

On April 17, 2013, Petitioner filed the *pro se Petition*. He alleges that he is in custody in violation of the Constitution of the United States based upon the following grounds:

1. Denied right to counsel during interigation [sic], right to fast and speedy trial on all allegations of arrest on 06-13-08. They refused to give copy of interigation [sic] recording. My lawyer didn't want to call any witnesses.

2. I showed new evidence in my post conviction motion. It showed date of arrest and complaint of 06-13-08 and date of trial 08-18-09 that was way past 90 days alone with exhibit (H.p.4) of TPO that I refused to sign.

It is the position of the Respondent that Petitioner's claims are procedurally defaulted.

**Procedural Default:**

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal

courts, a state criminal defendant with federal constitutional claims is required fairly to present those claims to the highest court of the state for consideration. 28 U.S.C. § 2254(b), (c). If he fails to do so, but still has an avenue open to him by which he may present the claims, his petition is subject to dismissal for failure to exhaust state remedies. *Id.; Anderson v. Harless*, 459 U.S. 4, 6 (1982) (*per curiam* ); *Picard v. Connor*, 404 U.S. 270, 275–76 (1971). If, because of a procedural default, the petitioner can no longer present his claims to a state court, he has also waived them for purposes of federal habeas review unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional error. *Murray v. Carrier*, 447 U.S. 478, 485 (1986); *Engle v. Issac*, 456 U.S. 107, 129 (1982); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

In the Sixth Circuit, a reviewing court must undertake a four-part analysis when the state argues that a federal habeas claim is precluded by the petitioner's failure to observe a state procedural rule. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). "First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Id*. Second, a court must determine whether the state courts actually enforced the state procedural sanction. *Id*. Third, the court must decide whether the state procedural rule is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim. *Id*. Finally, if the court has determined that a petitioner did not comply with a state procedural rule and that the rule was an adequate and independent basis on which to do so, then the petitioner is required to demonstrate that there was cause for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error. *Id*. This "cause and prejudice" analysis also applies to a

failure to raise or preserve issues for review at the appellate level. *Leroy v. Marshall*, 757 F.2d 94 (6th Cir. 1985).

In his first claim for federal habeas corpus relief, Petitioner alleges that he was denied counsel during his interrogation by police, that he was denied a fast and speedy trial, that he was denied the effective assistance of counsel based on his attorney's failure to call defense witnesses, and that he was denied a fair trial because the prosecutor denied Petitioner a copy of the recording of his interrogation. All of these claims appear to be readily apparent from the face of the record.[2] As such, they should have been raised on direct appeal, but were not. Further, Petitioner may now no longer file an appeal, by operation of Ohio's doctrine of *res judicata*. *See State v. Cole*, 2 Ohio St.3d (1982); *State v. Ishmail*, 67 Ohio St.2d 16, (1981); *State v. Perry*, 10 Ohio St.2d 175, (1967)(claims must be raised on direct appeal, if possible, or they will be barred by the doctrine of *res judicata*.). The state courts were never given an opportunity to enforce the procedural rule at issue due to the nature of Petitioner's procedural default.

Ohio's doctrine of *res judicata* in this context is adequate and independent under the third part of the *Maupin* test. To be "independent," the procedural rule at issue, as well as the state court's reliance thereon, must rely in no part on federal law. *See Coleman v. Thompson*, 501 U.S. 722, 732–33 (1991). To be "adequate," the state procedural rule must be firmly established and regularly followed by the state courts. *Ford v. Georgia*, 498 U.S. 411 (1991). "[O]nly a 'firmly established and regularly followed state practice' may be interposed by a State to prevent subsequent review by this Court of a federal constitutional claim." *Id*. at 423 (quoting *James v. Kentucky*, 466 U.S. 341, 348–351 (1984)); *see also Barr v. City of Columbia*, 378 U.S. 146, 149

[2] The procedural default of Petitioner's claim that he was denied his right to a speedy trial is also addressed in the Court's discussion of Petitioner's waiver of his second habeas claim.

(1964); *NAACP v. Alabama ex rel. Flowers*, 377 U.S. 288, 297 (1964); *see also Jamison v. Collins*, 100 F.Supp.2d 521, 561 (S.D. Ohio 1998).

The Sixth Circuit has consistently held that Ohio's doctrine of *res judicata*, *i.e*., the *Perry* rule, is an adequate ground for denying federal habeas relief. *Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006); *Coleman v. Mitchell*, 268 F.3d 417, 427–29 (6th Cir. 2001); *Seymour v. Walker*, 224 F.3d 542, 555 (6th Cir. 2000); *Byrd v. Collins*, 209 F.3d 486, 521–22 (6th Cir. 2000); *Norris v. Schotten*, 146 F.3d 314, 332 (6th Cir. 1998). Ohio courts have consistently refused, in reliance on the doctrine of *res judicata*, to review the merits of claims because they are procedurally barred. *See State v. Cole*, 2 Ohio St.3d at 112; *State v. Ishmail*, 67 Ohio St.2d at 16. Additionally, the doctrine of *res judicata* serves the state's interest in finality and in ensuring that claims are adjudicated at the earliest possible opportunity. With respect to the independence prong, the Court concludes that Ohio’s doctrine of *res judicata* in this context does not rely on or otherwise implicate federal law. Accordingly, the Court is satisfied from its own review of relevant case law that the *Perry* rule is an adequate and independent ground for denying relief.

In his second claim for habeas corpus relief, Petitioner alleges that he was denied his right to a speedy trial. Petitioner appears to raise this claim only in terms of an alleged violation of state law. However, issues of state law fail to warrant federal habeas corpus relief. A federal court may review a state prisoner's habeas petition only on the ground that the challenged confinement is in violation of the Constitution, laws or treaties of the United States. 28 U.S.C. § 2254(a). A federal court may not issue a writ of habeas corpus “on the basis of a perceived error of state law.” *Pulley v. Harris*, 465 U.S. 37, 41, 104 S.Ct. 871 (1984); *Smith v. Sowders*, 848 F.2d 735, 738 (6th Cir. 1988). A federal habeas court does not function as an additional state appellate court reviewing state courts' decisions on state law or procedure. *Allen v. Morris*, 845

F.2d 610, 614 (6th Cir. 1988). " '[F]ederal courts must defer to a state court's interpretation of its own rules of evidence and procedure' " in considering a habeas petition. *Id.* (quoting *Machin v. Wainwright*, 758 F.2d 1431, 1433 (11th Cir.1985)). It is only where an error resulted in the denial of fundamental fairness will habeas relief be granted. *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir.1988).

To the extent that Petitioner's second claim raises an issue of federal constitutional law and assuming, further, that Petitioner fairly presented this federal constitutional issue to the state courts, that claim is also procedurally defaulted. Petitioner alleged that he had been denied his right to a speedy trial in his petition for post-conviction relief. *Exhibit 29* to *Motion to Dismiss*.[3] However, Petitioner failed to appeal the trial court's denial of that petition. Petitioner may no longer do so, as Ohio does not permit delayed appeals in post-conviction proceedings.

> Under Ohio law, a delayed appeal is not available in civil proceedings. *See* Ohio Rule of Appellate Procedure 5(A). The Supreme Court of Ohio has specifically held that "a delayed appeal pursuant to App. R. 5(A) is not available in the appeal of a post-conviction relief determination . . . [and] that post-conviction relief proceedings will be governed by the Ohio Rules of Appellate Procedure as applicable to civil actions." *State v. Nichols*, 11 Ohio St.3d 40, 43, 463 N.E.2d 375, 378 (1984). Since petitioner failed to timely file an appeal from the trial court's denial of his post-conviction petition and Ohio does not permit delayed appeals from post-conviction relief determinations, the first *Maupin* factor is met as there is a state procedural rule applicable to petitioner's claim. . . .

*Wright v. Lazaroff*, 634 F.Supp. 2d 971, 987-88 (S.D. Ohio 2009).

> [T]his Court may presume that the state court would not have ignored its own procedural rule disallowing delayed appeals from post-conviction proceedings. *Simpson v. Sparkman*, 94 F.3d 199, 203 (6th Cir. 1996). The inapplicability of delayed appeals under

[3] Petitioner's Rule 26(B) application did not directly assert a speedy trial claim. Rather, that application asserted a claim that Petitioner's appellate counsel was ineffective for failing to raise on appeal a claim of ineffective assistance of trial counsel by reason of the latter's failure to preserve Petitioner's speedy trial rights.

> Ohio App. R. 5(A) for denials of post-conviction relief is firmly established and regularly followed by Ohio courts. *See Carley v. Hudson*, 563 F.Supp.2d 760, 776 (N.D. Ohio 2008) (and cases cited therein).

*Id*. at 988. *See also Nesser v. Wolfe*, 370 Fed. Appx. 665 (unpublished), 2010 WL 1141006, at *4 (6th Cir. March 25, 2010)(holding that "Ohio does not permit delayed appeals in post-conviction proceedings, and this is an adequate and independent ground upon which to deny relief.")(citation omitted).[4] Thus, this Court concludes that Petitioner has procedurally defaulted both of the claims that he presents for review in this proceedings.

Petitioner may still obtain review of the merits of his claims if he establishes cause for his procedural defaults and actual prejudice from the alleged constitutional violations.

> " '[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him[;] . . . some objective factor external to the defense [that] impeded . . . efforts to comply with the State's procedural rule." *Coleman v. Thompson*, 501 U.S. 722, 753, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

*Maples v. Stegall*, 340 F.3d 433, 438 (6th Cir. 2003). Petitioner has failed to establish cause and prejudice for his procedural default.

Petitioner can also avoid the consequences of his default if he presents new evidence that he is actually innocent of the crimes upon which he stands convicted:

> The United States Supreme Court has held that if a habeas petitioner "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims." *Schlup,* 513 U.S. at 316, 115 S.Ct. 851, 130 L.Ed.2d 808. Thus, the threshold inquiry is whether "new facts raise[ ] sufficient doubt about [the petitioner's]

[4] As noted *supra,* the state trial court denied Petitioner's petition for post- conviction relief, because "defendant was clearly brought to trial within 270 days, and such issue is not cognizable in this Court post appeal." *Exhibit 30* to *Motion to Dismiss*.

> guilt to undermine confidence in the result of the trial." *Id*. at 317, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808. To establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id*. at 327, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808. The Court has noted that "actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United* States, 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup*, 513 U.S. at 324, 115 S.Ct. 851, 130 L.Ed.2d 808. The Court counseled however, that the actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.' " *Id*. at 321, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808.

*Souter v. Jones*, 395 F.3d 577, 589–90 (6th Cir. 2005) (footnote omitted). This Court's independent review of the *Petition* and record does not reveal new evidence of actual innocence sufficient to avoid Petitioner's procedural default.

**WHEREUPON,** the Magistrate Judge **RECOMMENDS** that Respondent's *Motion to Dismiss,* Doc. No. 7, be **GRANTED** and that this action be **DISMISSED.**

**Procedure on Objections**:

If any party objects to this *Report and Recommendation*, that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further

evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

*s/ Norah McCann King*
Norah McCann King
United States Magistrate Judge

January 3, 2014